1
2
3
4
5
6
7

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERNANDO F. VELARDE,<br><br>         Petitioner,<br><br>v.<br><br>MATTHEW L. CATE, Warden,<br><br>         Respondent. | CASE NO. CV 10-2609 DMS (WMc)<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE: DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS** |

   This Report and Recommendation is submitted to United States District Judge Dana M. Sabraw, pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California.

## I.

## FEDERAL PROCEEDINGS

   On December 19, 2010, Fernando Velarde (hereinafter "Velarde" or "Petitioner"), filed a Petition for Habeas Corpus and a supplemental briefing in Federal Court. (Docket No. 1, 4.) The Respondent Matthew Cate received an extension and then filed his Answer to the Petition along with a Memorandum of Points and Authorities in support thereof. (Docket No. 5-7.) Velarde then received an extension to filed a traverse which was received on May 16, 2010. (Docket No. 8-10).

///

///

## II.

## **STATE PROCEEDINGS**

California charged Velarde with three counts under the California Health and Safety Code: Count 1 - possession/purchase of cocaine base for sale (14.25 Grams of Cocaine Base), Count 2 - transportation of a controlled substance, and Count 3 - having a concealed firearm in vehicle. (Lodgment 1, Clerk's Tr. at 1-2.) Velarde had one prior conviction for Driving Under the Influence in 1995 according to his Probation Officer Report (*Id.* at 21.)

Velarde accepted a plea deal and plead guilty only to Count 1 (Health and Safety Code 11351.5). (*Id.* at 12-14.) He received credit for time served at sentencing (364 days) and four years of state prison suspended. (*Id.*) If a non-citizen receives any conviction involving an "aggravated felony" they are required to be removed, and the possession/sale of any controlled substance is an "aggravated felony." (*Id*. at 14A); *see also* 8 U.S.C.A. § 1227(a)(2)(A)(iii) (West Supp. 2008).

After accepting a plea deal on September 20, 2007, Velarde attempted to withdraw his guilty plea in order to maintain his immigration status in the United States. (*Id*. at 31, 35-36.) He received a hearing on June 9, 2008. (*Id*. at 31.) The Superior Court of the State of California denied Velarde's plea withdrawal (Lodgment 3, Volume 2 at 133) after a hearing involving Mahir Sherif (Velarde's Attorney), Noelia Soto (Velarde's common law wife), and Mr. Velarde. (*Id*. *see generally*.) Velarde appealed this denial to the California Court of Appeal on March 5, 2009. (Lodgment 4.) Velarde also submitted a petition for Writ of Habeas Corpus to the California Court of Appeal based on ineffective assistance of counsel. (Lodgment 5.) The Court of Appeal, denied Velarde's motion to withdraw his plea and denied his petition for a writ of habeas corpus. (Lodgment 9 at 17.) Velarde petitioned for a re-hearing from the Court of Appeal but was denied on January 12, 2010. (Lodgment 10, 11.) Velarde's petition for review to the California Supreme Court was denied on April 5, 2010. (Lodgment 13.)

/ / /

/ / /

/ / /

## III.

## **UNDERLYING FACTS**

The following statement of facts is taken from the state appellate court opinion affirming Petitioner's conviction on direct review. This Court gives deference to state court findings of fact and presumes them to be correct; Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence. 28 U.S.C.A. § 2254(e)(1) (West Supp. 2004); *see also Sumner v. Mata*, 449 U.S. 539, 545-47 (1981) (stating that deference is owed to factual findings of both state trial and appellate courts).

> "In late January 2007, United States Boarder Patrol agents stopped Velarde in his vehicle at the San Clemente traffic checkpoint. Because Velarde appeared nervous, agents directed him to "secondary inspection." Agents again noticed Velarde appeared nervous when he pulled over on the shoulder in front of the secondary inspection site, exited his car and started towards the trunk of his car. Agents instructed him to get back in his vehicle and proceed into secondary inspection. There, agents again saw Velarde exhibit nervous behavior including trembling hands.
> Velarde consented to a canine inspection. The canine alerted to the front passenger seat area. Agents found 13 rounds of .45 caliber ammunition in the center console, a loaded magazine with seven more rounds of the same ammunition in the glove compartment, an unloaded magazine with seven more rounds of the same ammunition in the glove compartment, an unloaded handgun under the front passenger seat and four small bags that contained a total of 5.5 ounces, or 254.8 grams, of cocaine, of which about 107.1 grams was pure. Agents also found $531 in cash on Velarde.
> Velarde told agents the gun and drugs did not belong to him, but instead belonged to an individual he had met months earlier at a party in Tijuana, Mexico. Velarde said this individual had called him a few days earlier and had asked to meet him at a car wash in Chula Vista. Velarde agreed. At the car wash, the individual asked Velarde to hold the gun and "some cocaine" for him because he was traveling to Mexico. Velarde again agreed and put the gun and cocaine in his car and left them there.
> Velarde told the agents that a few days later the individual called him, said he had returned from Mexico and asked Velarde to bring the gun and drugs to Los Angeles the following day. Because Velarde often traveled to Los Angeles for business, he agreed, and was headed to Los Angeles on the day he was detained and arrested at the checkpoint. Velarde told the agents he was to call the individual for directions as he approached downtown Los Angeles. Velarde said he did not have an address for the individual, but did have the individual's cell phone number.
> In a subsequent interview conducted in early October 2007, Velarde said the individual that gave him the drugs and gun was the brother of a friend of his from Mexico. Velarde said the individual stopped by Velarde's house and asked if he could leave a bag with him. Velarde agreed, although he knew the bage contained drugs and a gun. Because Velarde said he had never been around drugs before, he was unaware the bag contained a significant quantity of drugs. The individual told Velarde he would return later that day to pick up the contraband. Velarde waited three days for the individual to return. When he did not, Velarde

|   |   |
|---|---|
| 1 | called the individual and told him he did not want to keep the contraband any |
| 2 | longer.  According to Velarde, the individual claimed he had come back from Mexico late in the evening on the day he left the bag with Velarde containing the |
| 3 | drugs, gun and ammunition, and because he did not want to disturb Velarde and his family, he returned to the Los Angeles area without the bag.  Velarde agreed |
| 4 | to return the gun and drugs to the individual in Los Angeles because Velarde needed to drive there to purchase business supplies. |

(Lodgment No. 9, *People v. Velarde*, No D055005, slip op. at 2-4.)

## IV.

## PETITIONER'S CLAIM

Velarde claims he was denied his Sixth Amendment right to effective assistance of counsel. Velarde asserts that his counsel, Mahir Sherif and associate Aurora Bewicke, did not provide him with all the information available concerning immigration removal relating to his aggravated felony.  Velarde contends he would not have approved a plea deal under terms which removed him from the country and, if his attorney would have informed him of the results of an aggravated felony, he would have taken his chances with a jury.  (Pet. *see generally*).

## V.

## DISCUSSION

Respondent contends that habeas relief is unavailable to his claim because Velarde knowingly entered into the terms of his plea deal.  (Ans. Mem. *see generally*).

**A.   Standard of Review**

Title 28, United States Code, § 2254(a), sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C.A. § 2254(a) (West 1994) (emphasis added).

The Petition was filed after enactment of the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214.  Under 28 U.S.C. § 2254(d), as amended by AEDPA:

> (d) An application for a writ of habeas corpus on behalf of a

> person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254(d) (West Supp. 2004).

A state court's decision may be "contrary to" clearly established Supreme Court precedent: (1) "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases" or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). A state court decision may involve an "unreasonable application" of clearly established federal law, "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407. Alternatively, an unreasonable application may be found, "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id.

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. . . . Rather, that application must be objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003) (internal quotation marks and citations omitted). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the United States Supreme] Court's decisions." Williams, 529 U.S. at 412.

Finally, habeas relief is also available if the state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court." 28 U.S.C.A. § 2254(d)(2) (West Supp. 2004). In order to satisfy this

provision, Petitioner must demonstrate that the factual findings upon which the state court's adjudication of his claim rests are objectively unreasonable, assuming it rests on a factual determination. Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). This Court will presume the state court's factual findings are correct, and Petitioner may overcome that presumption only by clear and convincing evidence. 28 U.S.C.A. § 2254(e)(1) (West Supp. 2004).

**B.     Petitioner is Not Entitled to Habeas Relief**

Velarde contends he was denied his Sixth Amendment right to effective assistance of counsel when counsel told him there was an " extremely slim" chance that he could avoid removal from the United States. (Pet. at 3.) Respondent contends that the state court's adjudication of this claim was neither contrary to, nor involved an unreasonable application of, clearly established federal law. (Ans. Mem. at 6.)

The ineffective assistance of counsel claim was presented to the state supreme court in the petition for review on direct appeal. (Lodgment No. 12.) That petition was denied with an order which stated: "Petition for review DENIED." (Lodgment No. 13.) This Court will "look through" the state supreme court's silent denial to the appellate court opinion, which reasoned in relevant part:

> A. Ineffective Assistance of Counsel - Factual Background
>
> The Evidence presented at the plea withdrawal hearing established that Velarde hired attorney Mahir Sherif for his criminal case and the immigration case that might follow. Sherif had some experience in immigration law, and his sister Rhoda Sherif, with whom he shared office space, practiced immigration law exclusively. FN2
>
> FN2. The record shows neither Sherif nor his sister handled Velarde's immigration matter.
>
> Sherif testified at the plea withdrawal hearing that he visited Velarde at least four times while Velarde was in state custody. However, Aurora Bewicke, and not Sherif, handled Velarde's plea negotiation and appeared on his behalf at the plea hearing. FN3. Bewicke was admitted to practice law in California in December 2006. Sherif testified he employed and supervised Bewicke, and she made appearances on Velarde's case as well as other cases Sherif assigned her. Bewicke worked for Sherif for about two years. He described her as "meticulous," opined she had done an excellent job on Velarde's case and based upon his review of the file, he concluded the immigration consequences of Velarde's plea were "never out of her mind."

- 6 -

FN3. There is information in the record suggesting Bewicke made the court appearances because Sherif was ill, but that is not clear, nor particularly relevant to our analysis.

Sherif testified Bewicke consulted with him and prepared memoranda regarding Velarde's case, but he also expected her to exercise her own independent judgment, which Sherif considered part of her job as a licensed attorney in California. Sherif noted from the file, including from a memorandum prepared by Bewicke dated September 20, 2007 - the same day Velarde entered his plea - that Bewicke unsuccessfully attempted to convince the prosecutor to reduce the plea offer to simple possession, as opposed to possession for sale or transportation of a controlled substance (count 2). Bewicke noted the prosecutor initially insisted on requiring Velarde to serve four years in custody, but she convinced the prosecutor to offer 364 days with a suspended sentence of four years.

In her September 20, 2007 memorandum to Sherif, Bewicke confirmed she told Velarde it was going to be "be very[,] very difficult immigration-wise" for him in light of his plea, but that she made sure there were "some aspects of the plea agreement that would give him a fighting chance" with immigration. Specifically, she made sure the plea form used the term "controlled substance" and not "cocaine" because, she noted, in her experience "there have been some cases where [defendants] won on the broadness of the state statute regarding 'controlled substance' versus the actual substance." She also made sure the plea used the term "knowledge" that the "controlled substance" would be sold, as opposed to intent to sell, as a further attempt to help Velarde immigration-wise. Despite such measures, Bewicke wrote that she reiterated to Velarde his chance of avoiding deportation as a result of the plea were "extremely slim," but that the alternatives "all carry just as bad consequences for immigration and at least he will get out [of jail] sooner."

In addition, in subsequent correspondence with Linda Pollack, Velarde's counsel who represented him at the hearing on his motion to withdraw his plea, Bewicke indicated she told Velarde several times that it was his decision whether to go to trial or take the plea, that at "every point" she told Velarde he "most likely would be deported, but at least [if he took the plea] he would spend less time in custody," that she went over the waivers on the plea form with Velarde and gave him the chance to ask questions and that the court also went over the waivers on the plea form.

Sherif testified that he also personally told Velarde he had the option to go to trial if he chose not to accept the plea offer, that if Velarde went to trial, he likely would lose based on the facts of his case and that if he lost, he likely would be subject to a lengthy prison sentence. Sherif noted that Velarde unfortunately was "caught between a rock and a hard place" and that in his opinion, Velarde chose the "lesser of [two] evils" when he accepted the plea offer.

Sherif testified that with an aggravated felony, it was "pretty much true" that Velarde had no hope of remaining in the United States. He noted, however, that while the law requiring deportation to Mexico was "clear," in his experience with immigration matters deportation was not certain. Sherif testified that from the very beginning of his representation

- 7 -

of Velarde, the immigration consequences were a key issue in the case....

In both his direct appeal and writ petition, Velarde claims defense counsel was ineffective because counsel advised Velarde he had a slim chance of not being deported if he plead guilty to possession of base cocaine for sale, an aggravated felony, when the law in fact required that he be deported. To support his contention, Velarde submitted in his petition the expert testimony of Dario Aguirre and a record from the United States Border Patrol showing he was subject to an immigration hold dating back to the date of his arrest.

At the hearing on the motion to withdraw the plea, the court heard the testimony of Sherif, Velarde and Noelia Soto, Velarde's common law wife of 18 years. The trial court noted, and we independently agree, that Velarde received a very significant benefit when he pled guilty here-a stayed prison term of four years and credit for time served. We also agree with the trial court's observation that defense counsel "did well" to procure this benefit from the prosecution, in light of the seriousness of the charges Velarde faced and the potential that he could serve up to 10 years in state prison on count 1 alone.

Indeed, the court noted Velarde's case was a presumptive state prison case based on the quantity of drugs in Velarde's possession, which it further noted was more than five times the amount of drugs that ordinarily qualifies a defendant for state prison. The court commented it could not "recall seeing a case involving 254 grams that didn't result in a state prison commitment. [¶] So it seems to me that Mr. Sherif's firm did a good job of avoiding a state prison commitment, despite the allegation that made this a presumptive state prison matter, given the quantity...."

The court further noted, and we agree, that the testimony of Sherif and the written memoranda prepared by Bewicke to Sherif show the prosecutor was steadfast in the requirement that Velarde plead guilty to count 1 of the information and that Velarde received yet another significant benefit when the prosecutor allowed him to admit to a firearm enhancement under Penal Code section 12011, subdivision (a), which increases punishment by one year, as opposed to the enhancement codified in subdivision (c) of that same statute, which increases punishment by three, four or five years if a defendant is in possession of a firearm while in violation of Health and Safety Code section 11351.5, among other statutes.

The trial court found it was "clear" that if this case had gone to trial "there was a very real likelihood, in fact, [a] probability that the defendant would have been convicted of each of these [three] charges. There was virtually no defense here, given that he's in the car, he's operating it, [and] a significant quantity of drugs" was found in his possession and he admitted to knowledge of the existence of the drugs and the gun. Thus, while simple possession may have been the goal for Velarde in a plea, the court noted that goal "was an entirely, completely, without question, unrealistic goal, given the facts of the case. The district attorney's office would never offer, under any circumstances, a straight possession, given facts like those that exist in this case."

- 8 -

   The trial court recognized that reducing Velarde's potential exposure in state prison "had to be first and foremost the concern of defense counsel." Thus, Velarde "had the option of either going to trial, probably losing and serving an almost certain significant prison term, again, mindful this was a presumptive state prison matter, or getting probation up front with the hope that an immigration judge would deviate from the law." The court noted that in its experience, where a large quantity of drugs was involved such as in Velarde's case, the district attorney requires a plea either to possession for sale or if an actual sale was made, then to the sale.

   The court found, and this court independently finds, "compelling" evidence that Bewicke considered and focused on Velarde's immigration issues when advising him on, and in connection with, his plea, and that she independently advised Velarde he had a slim chance of avoiding deportation if he accepted the plea. FN5 The court found that Velarde had his "back against the wall" and had extremely limited options in connection with his case, that it was unfortunate that Velarde made the choices he made, but that it was neither the trial court's doing nor his trial counsel's doing that led to this difficult situation for him and his family.

   FN5. The record also shows that Sherif told Velarde he would be deported if he took the plea, and that Velarde told Sherif that prior counsel had also given Velarde that same advice.

   The trial court further noted, and our review of the record establishes, the trial court independently advised Velarde that if he accepted the plea he would in fact be deported. This warning was confirmed in the plea form Velarde signed and initialed. FN6 The court also found Velarde held out some slim hope that the immigration judge "would exercise some flexibility and decide [his] matter based upon equity rather than law," or that perhaps the immigration hold against him would be lifted simply because of clerical error or the like. The court noted that in its experience such errors can happen, even if the law was clear, which justified defense counsel's view that Velarde had at least a slim chance of not being deported if he took the plea.

    FN6. This issue is discussed *post* in connection with the prejudice prong of ineffective assistance of counsel.

   We agree with the trial court that if the motion to withdraw the plea was granted and Velarde went to trial, based on the facts of his case that "would be a very, very bad decision," as Velarde most likely would be convicted of violations of Health and Safety Code section 11351.5 (possession of cocaine base for sale) and Penal Code section 12022, subdivision (c) (possession of a firearm in the commission of a violation of Health and Safety Code section 11351.5), face a lengthy prison term and then be deported. FN7. In light of the difficult circumstances Velarde faced at the time he entered his plea, and defense counsel's awareness of those circumstances and their attempts to minimize them, as shown in the record, we conclude Velarde did not satisfy his burden of demonstrating that his counsel's performance was deficient. (*See People v. Salcido, supra,* 44 Cal.4th at p. 170.)

(Lodgment No. 9, *People v. Velarde*, No D055005, slip op. at 2-4.)

- 9 -

The clearly established United States Supreme Court law governing ineffective assistance of counsel claims is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Baylor v. Estelle*, 94 F.3d 1321, 1323 (9th Cir. 1996) (stating that *Strickland* "has long been clearly established federal law determined by the Supreme Court of the United States"). For ineffective assistance of counsel to provide a basis for habeas relief, Petitioner must demonstrate two things. First, he must show counsel's performance was deficient. *Strickland*, 466 U.S. at 687. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Second, he must show counsel's deficient performance prejudiced the defense. *Id.* This requires a showing that counsel's errors were so serious they deprived Petitioner "of a fair trial, a trial whose result is reliable." *Id.* To satisfy the prejudice prong, Petitioner need only demonstrate a reasonable probability that the result of the proceeding would have been different absent the error. *Williams*, 529 U.S. at 406; *Strickland*, 466 U.S. at 694 ("The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel can not be shown by a preponderance of the evidence to have determined the outcome."). The prejudice inquiry is to be considered in light of the strength of the prosecution's case. *Luna v. Cambra*, 306 F.3d 954, 966 (9th Cir.), *amended*, 311 F.3d 928 (9th Cir. 2002).

**1. Given the facts of Plaintiff's case, the California Appellate Court's application of *Strickland*'s first prong was unreasonable in light of clearly established Supreme Court precedent.**

After careful review of the state court records, this Court recommends a finding that the California Appellate Court's application of *Strickland*'s first prong was unreasonable in light of clearly established Supreme Court precedent. Here, Bewicke Velarde's attorney gave vague and incomplete advice regarding deportation which was a clear consequence of Plaintiff's offense. Under the recent Supreme Court decision, *Padilla v. Kentucky*, 130 S.Ct. 1473, 1486 (2010), counsel must inform his client when a plea deal carries a <u>clear</u> risk of deportation so his client can properly balance his choices. *Padilla v. Kentucky*, 130 S.Ct. 1473, 1486 (2010); *United States v. Bonilla*, 637 F.3d 980, 983 (9th Cir. 2010).

1  Under the Immigration and Nationality Act of 1952, an alien <u>shall</u> be removed if he committed an aggravated felony any time after admission to the United States. Immigration and Nationality Act of 1952 § 237(a)(2)(A)(iii) (2011 West)(emphasis added). The Attorney General can exercise his personal discretion to cancel the removal of a non-citizen who committed an aggravated felony. *Id.*[1] An "aggravated felony" includes illicit trafficking of a controlled substance. 8 U.S.C. § 1101(a)(43)(B) (2011 West).

When a non-citizen is accused of a crime, the defense counsel is required to inform him of potential deportation if he pleads guilty. *Padilla* 130 S.Ct. at 1486. In *Padilla*, the defendant's attorney never informed him about the potential immigration consequences if he accepted a plea deal. The Supreme Court held Padilla's attorney did not meet the objective standard of reasonableness under *Strickland*'s first prong. *Id.* at 1483. The Padilla court held that in order to render effective assistance of counsel under *Strickland*, counsel *must* inform a defendant of immigration consequences especially when the information is readily available and "truly clear." *Id*. Indeed, the *Padilla* court held a defense attorney has a responsibility to give his client correct information when the immigration consequences of a guilty plea are certain and unambiguous. *Id.* at 1483 ("When the law is not succinct and straightforward ..., a criminal defense attorney need do nothing more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear.")

Similarly, in *United States v. Bonilla*, 637 F.3d 980, 983 (9th Cir. 2010), the Ninth Circuit interpreted the *Padilla* opinion to protect non-citizens against "passive omission of correct advice about the possibility of deportation." *Id.* at 983-984. The Ninth Circuit in *Bonilla* held that if a defendant accepts a guilty plea which mandates deportation "he is entitled to know it is a virtual certainty." *Bonilla*, 637 F.3d at 984.

Here, under the Nationality Act of 1952 section 237, it was "virtually certain" that Mr.

---

[1] "Under contemporary law, if a noncitizen has committed a removable offense ... his removal is *practically inevitable* but for the possible exercise of limited remnants of equitable discretion vested in the Attorney General to cancel removal for noncitizens convicted of particular classes of offenses." *Padilla*, 130 S. Ct. At 1480.

- 11 -

1  Velarde would be deported because he pleaded guilty to an aggravated felony.  *See* Nationality Act
2  of 1952 § 237; *Padilla*, 130 S.Ct. at 1483; *Bonilla*, 637 F.3d at 984; (Lodgment 1 at 14A.)  Despite
3  his attorney's efforts to receive a sentencing reduction and favorable language in the plea deal, an
4  aggravated felony **requires mandatory removal** according to the statute.  *See* Nationality Act of
5  1952 section 237.

6  While Ms. Bewicke and Mr. Sherif attempted to mitigate Velarde's criminal footprint in the
7  immigration file, they did not adequately convey to Velarde that, if he pleaded guilty to an
8  aggravated felony, his deportation from the United States was a virtual certainty.  *See Bonilla*, 637
9  F.3d at 984; (Lodgment 9 at 5.)  Bewicke told Velarde that his plea deal gave him a "fighting
10 chance" and a "extremely slim" chance to avoid removal to Mexico.  (Lodgment 3 at 36.)
11 However, this "extremely slim" chance rested on the premise that the immigration judge might
12 exercise his "flexibility and decide [the Petitioner's] matter based upon equity rather than law" or
13 on the off-chance that Mr. Velarde's "immigration hold would be lifted simply because of clerical
14 error or the like." [Lodgment 9 at 10-11.]  Given the Ninth Circuit's advisement against attorneys
15 use of "passive omission" when counseling their clients, **IT IS RECOMMENDED** the Court find
16 the California Court of Appeal unreasonably applied *Strickland* to the facts of Velarde's case in
17 light of the rule announced recently by the Supreme Court in *Padilla* which requires a duty to give
18 correct advice when immigration consequences are clear.  *Padilla* at 1483.

19 **2.    Mr. Velarde suffered no prejudice as a result of his attorneys' actions.**

20 While this Court recommends finding the state appellate court unreasonably applied
21 *Strickland*'s first prong, this Court's review of the record does support a recommendation that the
22 California Court of Appeals applied *Strickland*'s second prong correctly.  Defense counsel's
23 performance did not improperly prejudice Velarde; and under *Strickland*, even if counsel's
24 performance is deficient, a judgment cannot be set aside if the error had no effect on the outcome.
25 *Strickland*, 466 U.S. at 691.  Specifically, in order to prevail under *Strickland*'s second prong, the
26 defendant must show with "reasonable probability that, but for counsel's unprofessional errors, the
27 result of the proceeding would have been different."  *Strickland,* 466 U.S. at 694.
28 ///

1   ///

2   ///

3   In its opinion finding no prejudice under *Strickland's* second prong, the California appellate court
4   reasoned as follows:

> "Velarde was not Prejudiced in any Event
>
> Even if we were to conclude that defense counsel's performance was somehow deficient, we nonetheless would affirm the denial of his motion to withdraw his guilty plea because we also conclude Velarde did not establish that counsel's deficiencies prejudiced him. (See *People v. Salcido, supra,* 44 Cal.4th at p. 170.) To establish prejudice, Velarde was required to show a " 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' [Citation.]" (*Ibid.*)
>
> Here, the record shows that when Velarde pled guilty to count 1, possession of cocaine base for sale (Health & Saf.Code, § 11351.5), he signed and initialed a plea of guilty form that provided, among other things: "I understand that if I am not a U.S. citizen, this plea ... may result in my removal/deportation, exclusion from admission to the U.S. and denial of naturalization. Additionally, if this plea is to an 'Aggravated Felony' listed on the back of this form, then I **will** be deported, excluded from admission to the U.S., and denied naturalization." The word "may" in the first sentence was crossed out and the word "will" was handwritten over it. The plea form indicated an aggravated felony included "felony possession of any controlled substance" and "possession for sale of any controlled substance."
>
> *Before* the trial court accepted his change of plea, it questioned Velarde extensively. Velarde indicated to the court he had signed and initialed the plea, as required. After further questioning, the court recessed the hearing to give Velarde additional time to meet with defense counsel to ensure all his questions concerning the plea were answered.
>
> After the recess, Velarde, who was sworn as a witness, told the court that during the recess defense counsel had answered all of his questions and he believed it was in his best interest to plead guilty. The court noted the plea agreement reached by the parties, which it summarized as follows:
>
> "If you [Velarde] plead guilty to count one, a violation of Health and Safety Code section 11351.5, [and] if you admit a [Penal Code section] 12022 [, subdivision] (a)(1) allegation [related to the gun], it adds a year to count one as a possibility. The prosecution agrees that the balance [of the charges] would be dismissed against you. They agree also that at the time of sentencing that the court should suspend a four-year prison term, and understanding the court would give you credit for time-served at the time of sentencing."
>
> Velarde confirmed for the court this was the plea and that there had been no other promises or agreements influencing his decision to plead guilty. After asking Velarde a series of questions to ensure he understood the rights he was giving up by entering a plea of guilty, including the right to a jury trial, to confront and cross-examine witnesses and the right against self incrimination, the court informed Velarde the guilty plea could be used for many purposes *and would result in his deportation:*
>
> "THE COURT: Now, sir, the case can be used against you for many purposes. If not a citizen in the country, it will result in removal, deportation or exclusion from admission into the United States and denial of naturalization. Is that understood?

- 13 -

>       "[Velarde]: Yes."
>
>       The court found Velarde knowingly and voluntarily agreed to plead guilty, and observed: "It does appear to me that [Velarde] is in full possession of his facilities. I believe that he understands the nature of the charges as well as the consequences of entering a plea here today. The court has been provided with an adequate factual basis. [Velarde] has knowingly, willingly, voluntarily, expressly, and explicitly waived each of his rights."
>
>       Velarde admitted he "unlawfully possessed [a] controlled substance in a useable quantity with the knowledge it would be sold and [he] possessed an unloaded firearm during the commission of a felony." Velarde declared under penalty of perjury that he read, understood and initialed each item in the plea form (including line 7d, which described for him the immigration consequences of his plea) and "everything on the form ... is true and correct."
>
>       At the court's invitation, defense counsel agreed with and joined in the waiver of Velarde's rights and entry of his guilty plea. Defense counsel also signed the plea form, after the attorney's statement, which provided as follows:
>
>       "I, the attorney for the defendant in the above-entitled case, personally read and explained to the defendant the entire contents of this plea form and any addendum thereto. I discussed all charges and possible defenses with the defendant, and the consequences of this plea, *including any immigration consequences.* I personally observed the defendant fill in and initial each item, or read and initial each item to acknowledge his/her understanding and waivers. I observed the defendant date and sign this form and any addendum. I concur in the defendant's plea and waiver of constitutional rights." (Italics added.)
>
>       Despite Velarde's contention that defense counsel misinformed him regarding the immigration consequences of his plea, the record shows Velarde was fully informed of those consequences by the trial court, when it questioned Velarde after he was sworn as a witness and ensured he understood that if he plead guilty to count 1, he would in fact be deported. The court's questioning came after the court recessed the hearing to give Velarde additional time to talk to defense counsel about the plea. Velarde also signed the change of plea form, which confirmed he would be deported because he was pleading guilty to an aggravated felony.
>
>       Thus, even assuming Velarde's counsel misinformed him about the immigration consequences of his plea, that misinformation did not prejudice Velarde in light of the clear and unequivocal information he independently received from the trial court and the plea form regarding the immigration consequences of his plea. We therefore conclude Velarde cannot show a reasonable probability that, but for his counsel's alleged misinformation, the result of the proceeding would have been different. (See *People v. Salcido, supra,* 44 Cal.4th at p. 170.)"

(Lodgment No. 9, *People v. Velarde*, No D055005, slip op. at 2-4.)

Given the state appellate court's reliance on admonitions Velarde received from the trial court and through review of his plea form, this Court finds the Ninth Circuit's opinion in *Womack v. Del Papa*, 497 F.3d 998, 1003 (9th Cir. 2007) instructive. In *Womack*, the defendant accepted a plea agreement that "unambiguously" informed him the state could argue for a life sentence without parole.

- 14 -

1 *Womack v. Del Papa*, 497 F.3d 998, 1003 (9th Cir. 2007). At the plea hearing, the judge told him he
2 could still be given a life sentence without parole and Womack confirmed he understood. *Id.*
3 Womack raised an ineffective assistance of counsel claim on appeal. The Ninth Circuit failed to find
4 the prejudice necessary to prevail on an ineffective assistance of counsel claim because the record
5 indicated Womack understood the written warning on his plea forms as well as the oral warning from
6 the trial judge; therefore, he failed to show he was prejudiced by his attorney's performance. *Id.*
7 Here, Velarde was unambiguously warned of the consequences of his plea agreement, into which he
8 entered voluntary, knowingly, and intelligently. *See Womack*, 497 F.3d at 1003; (Lodgment 9 at 15.)
9 Specifically, the state appellate court noted that Velarde signed and initialed his plea form which
10 stated "I understand that if I am not a U.S. citizen, this plea . . . may [in hand writing may was
11 scratched off and 'will' was written over it] result in my removal/deportation . . . . Additionally, if this
12 plea is to an 'Aggravated Felony' listed on the back of this form, then I **will** be deported." (Lodgment
13 9 at 13 *emphasis in original*). The state appellate court also emphasized that the word "may", which
14 originally appeared on the form was crossed out and "will" was written over it. (*Id.*) Furthermore,
15 the state appellate court found the trial court questioned Velarde extensively regarding his rights,
16 allowed a recess so that Velarde could speak to his attorney, and confirmed Velarde understood his
17 plea "will result in removal, deportation or exclusion from admission into the United States."(*Id.* at
18 14-15.)

19 Moreover, there is nothing in the record to suggest that if Velarde had received clear advice
20 regarding the deportation consequences of his plea, he would have rejected the plea deal. Under
21 *Strickland*'s reasonable probability standard Velarde must show more than just the desire to make a
22 different choice. *See Strickland*, 466 U.S. at 694. Here, Velarde's crimes had "virtually no defense"
23 and after serving a lengthy prison term , he would still be removed from the United States. (Lodgment
24 9 at 10.) The state appellate court was unable to evaluate any different result for Velarde's crimes
25 using an objective approach. *See Strickland* 466 U.S. at 695-696; (Lodgment 9 at 11-12.)
26 Specifically, the state appellate court determined regardless of what choice Velarde made, his outcome
27 would have resulted in deportation and the plea deal was the "lesser of [two] evils." *See Strickland*,
28 466 U.S. at 695; (Lodgment 9 at 6, 11-12.)

1  This Court's review of the record shows Mr. Velarde: (1) understood the consequences of his plea, (2) initialed the plea form indicating he read the immigration consequences, and (3) affirmed to the Judge that he knew his guilty plea "will result in removal" from the United States. (Lodgment 9 at 12.) Moreover, Velarde faced removal from the United States under all reasonable outcomes available to him. Therefore, **IT IS RECOMMENDED** that the Court find the California Court of Appeal correctly identified and reasonably applied the second prong of *Strickland* to the facts of this case. Accordingly, the Court recommends denying habeas relief on Petitioner's ineffective assistance of counsel claim.

## VI.
## CONCLUSION AND RECOMMENDATION

For all of the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: (1) approving and adopting this Report and Recommendation; and (2) directing that judgement be entered denying the Petition.

**IT IS ORDERED** that no later than **October 3, 2011** any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **October 24, 2011** The parties are advised that failure to file objections with the specified time may waive the right to raise those objections on appeal of the Court's order. See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATED: September 12, 2011

*/s/ W. McCurine Jr.*

Hon. William McCurine, Jr.
U.S. Magistrate Judge
United States District Court

- 16 -